IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL BEST, II,<br><br>             Plaintiff,<br><br>     v.<br><br>HOUSING AUTHORITY, ET AL.,<br><br>             Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 12-894 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

LaTonya N. Bland-Tull, Esq.
HAGERTY & BLAND-TULL LAW, LLC
Moorestown Times Square
714 East Main Street
Suite 2C
Moorestown, NJ 08057
     Attorney for Plaintiff Michael Best, II

Susan E. Volkert, Esq.
DECOTIIS, FITZPATRICK, COLE & WISLER, LLP
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, NJ 07666
     Attorney for Defendants Housing Authority, Urban
     Redevelopment Agency of the City of Atlantic City, Urylene
     Judy Grate, and Pamela James

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

     Plaintiff, a former employee of the Housing Authority and

Urban Redevelopment Agency of the City of Atlantic City

("ACHA"), alleges in an eight-count complaint that he was fired

due to his political affiliation and in retaliation for

exercising his rights under the United States and New Jersey Constitutions and the Family and Medical Leave Act. This matter comes before the Court on Defendants' motion for summary judgment. [Docket Item 23.] Defendants maintain that Plaintiff's claims are supported only by bare allegations in his complaint, and contrary to these allegations, Plaintiff's position at ACHA was eliminated as part of a well-documented workforce reduction in 2011. For the reasons discussed below, the Court will grant Defendants' motion for summary judgment on all claims.

## II.  BACKGROUND

### A. Facts

Plaintiff Michael Best was employed by the Housing Authority and Urban Redevelopment Agency of the City of Atlantic City as a Social Caseworker Supervisor and Family Self-Sufficiency Coordinator ("FSS Coordinator") from April 3, 2006 to June 24, 2011. (Def. SMF [Docket Item 23-2] ¶ 1.) Plaintiff is the nephew of former Atlantic City Council President, Craig Calloway,[1] who was a political opponent of former Mayor Lorenzo Langford. (Id. ¶ 5; Pl. Counterstatement of Material Facts ("Pl. CMF") [Docket Item 32] ¶ 2.) His mother, Gwendolyn Lewis, is Craig Calloway's sister and a former ACHA employee. (Def. SMF ¶ 6.) In the 2009 mayoral election, Plaintiff supported another

---

[1] The Court adopts Plaintiff's spelling of Mr. Calloway's last name.

2

opponent of Mayor Langford, Scott Evans. (Best Dep. [Docket Item 23-5] at 254:14-21.) Members of the ACHA Board are appointed by the Atlantic City Council. (Pl. CMF ¶ 10.)

Defendants Pamela James and Judy Grate were Plaintiff's supervisors at ACHA and both are supporters of Mayor Langford. (Id. ¶ 8.) James was involved in the hiring process for Plaintiff's position in 2006, but did not recommend him for the position. (Def. SMF ¶ 3.) She was aware that Plaintiff was Ms. Lewis' son and Langford's nephew, and has referred to Mayor Langford as a "friend or colleague." (Pl. CMF ¶¶ 6, 9.)

Plaintiff alleges that James and Grate treated him differently from other employees due to his relation to Calloway. In April, 2007, Plaintiff wrote a memo to Personnel Director, Alesia Humphrey,[2] complaining about James, his supervisor at the time. (Pl. Ex. B [Docket Item 34-1.]) In the memo, Plaintiff discusses James' request for a list of FSS clients and clarifies that he has no objection to her request for the list, "but she was condescending in her tone and the nature of these questions . . . seemed more like accusations and innuendos implying things were being done improper [sic]." (Id.) In March, 2007, Plaintiff wrote a memo to ACHA Acting Executive Director, James Gannone, raising his concern that James would

---

[2] The Court adopts the spelling of Ms. Humphrey's name as it appears on Plaintiff's memo.

use her position as his supervisor "for retaliatory purposes"
due to her "personal objection to me and my family." (Pl. Ex. C
[Docket Item 34-1.]) Plaintiff attached a newspaper article from
March 29, 2007 to corroborate his concerns. (Id.) The newspaper
article reported that James' sister, Gabrielle Jacobs-Caldwell,
Vice Principal of the Richmond Avenue School, was disheartened
by numerous failed attempts at a promotion to principal due to
"the votes of a six-member bloc aligned with former City Council
President Craig Callaway." (Id.) The article noted that Caldwell
"claims the votes against her are political pay-back stemming
from her sister Pamela Jones, an official with the city's
Housing Authority, refusing to hire Callaway's nephew, Michael
Best, also a former school board member."[3] (Id.)

    Plaintiff asserts that his mistreatment by James and Grate
intensified when Mayor Langford took office and "more board
members became Langford board members at the Housing Authority."
(Best Dep. at 231:6-18.) Plaintiff contends, based on a January
28, 2010 memo, that Grate required him to "clock in and out" and
took away his office and "all [of his] different job duties and
job descriptions" that he performed before Grate became his
supervisor.[4] (Id. at 162:24-164:14.) When Grate became Resident

---

[3] Although the article refers to "Pamela Jones," there appears to
be no dispute that this is a reference to Defendant James.
[4] The Court is unable to locate the January 28, 2010 memo in the
present record.

Services Supervisor, she informed Plaintiff that he was demoted, prevented him from attending senior staff meetings, prohibited him from using the ACHA van, and removed two employees, John Wright and Melinda Batts, from his supervision. (Id. at 236:4-8; 238:8-22.)

Plaintiff also contends that the ACHA discriminated and retaliated against him for taking leave under FMLA in 2009 and 2010. (Def. SMF ¶ 29.) Defendant Grate requested that Plaintiff notify her of his requests for Intermittent Family Medical Leave by calling her business cellular phone instead of her office phone. (Id. ¶ 31.) However, Plaintiff did not call her business cell phone as directed. (Id. ¶ 32.) This upset Grate because she would not know if Plaintiff was taking leave until she arrived at work. (Pl. CMF ¶ 30.) In one instance, Plaintiff was initially granted leave, then notified by Human Resources that he was not eligible for FMLA and that his leave would be unpaid. (Id. ¶ 34; Def. SMF ¶ 26.) During his leave, James and Grate reassigned some of Plaintiff's clients to another employee. (Pl. CMF ¶ 27.) Grate locked some of Plaintiff's files in her office and prevented him from accessing them. (Best Dep. at 190:3-9.)

While employed at ACHA, Plaintiff filed union grievances against James and Grate, as well as a tort claims notice against Defendants for violating his rights. (Pl. CMF ¶¶ 31-32.)

5

On May 6, 2011, Plaintiff was notified that "for reasons of economy and efficiency you will be laid off from your permanent or probationary position of: Social Case Work Supervisor effective at the close of the working day on June 24, 2011." (Def. SMF ¶ 23.) On May 10, 2011, ACHA provided to the Communication Workers of America – Local 1038 and the New Jersey Civil Service Commission ("CSC") a list of nine employees who had been laid off, including Plaintiff.[5] (Id. ¶ 24.)

James made the decision to terminate Plaintiff's employment. (Pl. CMF ¶ 41.) Grate testified that she was not involved in the decision to terminate Plaintiff and no one consulted her about whether he should be terminated. (Grate Dep., Def. Ex. D [Docket Item 23-6] at 37:15-22.) Plaintiff is unaware whether Grate was involved in the layoff decision, but assumes that the decision makers would ask her because she was his immediate supervisor. (Best Dep. at 208:16-209:4.)

Following Plaintiff's termination, Grate was responsible for two vacant positions of Service Coordinator for which Plaintiff applied. (Pl. CMF ¶ 34.) She interviewed applicants for the vacancies and hired two individuals not previously

---

[5] The other employees who had been terminated were Melinda Batts, Michael Casale, Patricia Basile, Leslie Fitzpatrick, John Wright, Jean Bentley, Kara Dillahay, and Rose Holland. (Id. ¶ 24.)

employed by ACHA. (Id. ¶ 35.) Plaintiff was not granted an interview. (Id. ¶ 36.)

Defendants contend that Plaintiff was terminated as part of workforce reduction when the ACHA faced budget cuts in 2011. Plaintiff does not dispute that Defendants laid off a number of employees in 2011. According to Defendants, the Department of Housing and Urban Development ("HUD") decreased the ACHA's operating subsidy and, beginning in April, 2010, HUD required the ACHA to operate under an Asset Management System ("AMS") – essentially, a breakeven basis. (Def. Ex. G [Docket Item 23-7.]) The ACHA's Finance Department reviewed all areas of discretionary spending and concluded that a labor reduction was necessary to conform to the AMS. (Def. SMF ¶¶ 11-12.) The ACHA identified unnecessary positions to be eliminated and decided to leave certain vacancies unfilled to avoid additional layoffs. (Id. ¶¶ 13-14.) By letter dated April 1, 2011 James notified Kenneth Connolly, Acting Director of the New Jersey Civil Service Commission ("CSC"), of the planned layoff of ACHA employees "in accordance with N.J.A.C. 4A:8-14." (Def. Ex. H [Docket Item 23-7] at 1.) James identified the reason for the layoff as "economy, efficiency and continuing decreased operating subsidies from HUD, as well as, the new HUD rules governing the organization and operation of Public Housing programs." (Id.) The letter listed the positions to be

7

eliminated as follows: Secretarial Assistant Typing, Real Estate Officer, Housing Assistance Tech, Assistant Warehouse Supervisor, Program Monitor & Dept. Assistant, Social Case Work Supervisor, Tenant Interviewer, and Training Technician. (<u>Id.</u>) The letter notes that ACHA considered "voluntary alternatives" to layoffs, but determined that these alternatives "would not be feasible and/or would not produce the savings necessitated by the budgetary reductions." (<u>Id.</u> at 2.)

It is undisputed that the ACHA eliminated only one of the two existing social casework supervisor positions. (Def. SMF ¶ 20.) In accordance with their requirement that the last hired would be the first eliminated, ACHA retained Katherine McColl, the social casework supervisor hired in 2000, prior to Plaintiff. (<u>Id.</u>) The two employees Plaintiff supervised were also laid off in June, 2011. (<u>Id.</u> ¶ 21.) The ACHA reallocated portions of the HUD grant that funded Plaintiff's salary to other employees, including Grate, who assumed Plaintiff's former duties. (<u>Id.</u> ¶ 22.) According to Plaintiff, James' and Grate's salaries increased at this time. (Best Dep. at 97:17-20.)

ACHA terminated more employees in December, 2011 and in June, 2013. (James Dep., Def. Ex. F [Docket Item 23-7] at 124:7-20; 132:11-20; 114:22-115:4.)

**B. Procedural history**

On January 4, 2012, Plaintiff filed an eight-count
Complaint against the ACHA, Acting Family Services Supervisor
Urylene Judy Grate, and Executive Director Pamela James in the
Superior Court of New Jersey, Law Division, Atlantic County,
Docket No. ATL-L-133-12.[6] [Docket Item 1-1.] Plaintiff asserts
claims for political affiliation discrimination pursuant to 42
U.S.C. § 1983 and the New Jersey Civil Rights Act and for
violations of his petition rights under the First and Fourteenth
Amendments of the United States Constitution and the First and
Sixth Amendments of the New Jersey Constitution. Plaintiff also
asserts claims for violations of the New Jersey Law Against
Discrimination, FMLA, and for breach of an implied contract of
employment.[7] On February 14, 2012, Defendants removed this action
to the District of New Jersey pursuant to 28 U.S.C. §§ 1441 and
1446. [Docket Item 1.] Defendants filed an answer on March 2,
2012. [Docket Item 5.] After a series of amendments to the
initial scheduling order, Magistrate Judge Schneider entered an
Amended Scheduling Order on January 31, 2014 directing the
parties to file dispositive motions no later than March 14,

---

[6] Plaintiff also named as Defendants "John Doe Decision-Makers
(Plural 1-10)" and "John Doe Board Members (Plural 1-10)."
[7] Plaintiff's complaint is rambling and redundant, rending it
difficult to distill the distinction between and basis for each
count. Having reviewed Plaintiff's complaint and Defendants'
motion, the Court finds that Defendants seek summary judgment on
all substantive counts.

2014. [Docket Item 19.] Defendants filed the instant motion for summary judgment on September 9, 2014, nearly six months after the deadline. Noting Plaintiff's objection, by letter order dated September 19, 2014, the Court permitted Defendants to file their motion for summary judgment. [Docket Item 28.] Plaintiff subsequently filed opposition [Docket Item 33] and Defendants filed a reply [Docket Item 35.]

III. **STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007).

IV. **DISCUSSION**

Defendants argue that Plaintiff's claims fail as a matter of law. Defendants assert that Plaintiff has failed to make a

prima facie showing of discrimination based on political affiliation under 42 U.S.C. § 1983 and the NJCRA; that Plaintiff's claims based on a violation of his petition rights under the United States and New Jersey Constitutions fail as a matter of law because there is no evidence causally connecting any protected activity to his layoff; that claims of discrimination based on political affiliation are not cognizable under the NJLAD; that Plaintiff has failed to adequately support claims for interference and retaliation under FMLA; that Plaintiff's claim for breach of implied contract fails as a matter of law because the ACHA employee handbook explicitly disclaims any implied contract; and that claims against James and Grate must fail because Plaintiff cannot establish personal involvement by either defendant in the alleged misconduct.

In response, Plaintiff concedes that the ACHA reduced its workforce in 2011, but maintains that including Plaintiff in the layoffs was pretext for their discrimination and retaliation against him based on political affiliation. Moreover, Plaintiff argues that his constitutional rights were violated after being harassed and fired because he filed grievances, internal complaints, and a NJTCA notice against Defendants. He further contends that Defendants retaliated against him for exercising his rights under FMLA and that Grate and James were both personally involved in the violation of his civil rights.

11

Plaintiff agrees to voluntarily dismiss his claims under NJLAD[8]
and offers no argument to support his claim for a breach of an
implied employment contract.[9]

The Court will address each of Defendants' arguments in
turn.

## A. Political affiliation discrimination

Defendants argue that Plaintiff has failed to make a prima
facie showing of discrimination based on political association
under 42 U.S.C. § 1983 and the NJCRA. The Court agrees.

In the Third Circuit, to make out a prima facie case of
political affiliation discrimination, a plaintiff must show that
(1) plaintiff was "employed at a public agency in a position
that does not require political affiliation," (2) plaintiff
"engaged in constitutionally protected conduct," and (3) "this
conduct was a substantial or motivating factor in the
government's employment decision." Galli v. New Jersey
Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007). Defendant
may "avoid a finding of liability by proving by a preponderance
of the evidence that the same employment action would have been
taken even in the absence of the protected activity." Id.

---

[8] Accordingly, the Court will grant Defendants' motion for
summary judgment as to Plaintiff's claim under the NJLAD.
[9] The Court will grant Defendants' motion for summary judgment as
to the breach of contract claim because Plaintiff fails to
address, let alone refute, Defendants' contention that the ACHA
employee handbook expressly disclaimed any implied contract. See
Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284, 285 (1985).

(quoting <u>Stephens v. Kerrigan</u>, 122 F.3d 171, 176 (3d Cir. 1997)). Implicit in the final prong "is a requirement that the plaintiff produce sufficient evidence to show that the defendant knew of the plaintiff's political persuasion, which requires proof of both knowledge and causation." <u>Id.</u> at 275 (internal quotation and citation omitted).

In the present case, Plaintiff has presented no evidence that his political affiliation was a substantial or motivating factor in his layoff.[10] First, it is unclear whether James and Grate were aware of Plaintiff's political affiliation. While it appears undisputed that James and Grate knew of Plaintiff's relation to Craig Calloway and both James and Grate were supporters of Mayor Langford, Plaintiff has identified no evidence in the record that either knew of his support for Mayor Langford's opponent, Scott Evans, in the 2009 mayoral election. Knowledge of Plaintiff's familial relations does not necessarily

---

[10] Defendants argue in conclusory fashion that Plaintiff has failed to show that he engaged in constitutionally protected political activity. The Court of Appeals has held that the First Amendment protects an employee's "failure to support the winning candidate," as well as an employee's "failure to engage in any political activity whatsoever." <u>Galli</u>, 490 F.3d at 272-73; <u>Bennis v. Gable</u>, 823 F.2d 723, 731 (3d Cir. 1987). Even in light of this broad definition, merely being related to Craig Calloway, a political opponent of Mayor Langford, is insufficient to constitute protected political activity. Nevertheless, viewing the evidence most favorably to Plaintiff, the Court must conclude at this stage that his support for Scott Evans, an opponent of Mayor Langford in the 2009 mayoral election, is sufficient to show that he engaged in constitutionally protected political activity.

imply knowledge of his political affiliation. See Morales
Concepcion v. Lluch, 312 F. Supp. 2d 125, 131 (D.P.R. 2004)
(finding that plaintiff's relation to uncle and defendant's
knowledge of plaintiff's political affiliation to be "extremely
diluted for evidentiary value"); Goodman v. Pennsylvania Tpk.
Comm'n, Civ. 96-5921, 1998 WL 159046, at *6 (E.D. Pa. Mar. 20,
1998) (noting that defendant's admission that he knew
plaintiff's uncle was a Democrat had "no bearing on whether
[defendant] knew Plaintiff's political affiliation"). Second,
Plaintiff has presented no evidence that his support for Evans
caused his layoff. Plaintiff's argument regarding causation
rests on two primary assertions: that he experienced increased
harassment when Mayor Langford returned to office and that City
Council and ACHA board members made derogatory and threating
statements about Plaintiff. Although Plaintiff provides no
citation to the record to support his allegations of increased
harassment, the Court assumes he is referring to the requirement
that he "clock in and out," the loss of his office, the
reduction of his supervisory duties, and the prohibition on use
of the ACHA van. However, Plaintiff fails to explain, beyond
conclusory allegations, how these ordinary changes in his
employment related in any way to his political affiliation.
Indeed, these minor alterations in his work environment and
duties are consistent with Plaintiff's experience at ACHA nearly

14

two years prior to Langford's election in 2009 about which he also complains (i.e., James' request for a list of FSS clients), and they are well within the bounds of customary workplace supervision. Absent evidence that Plaintiff was treated differently from other similarly situated employees, a reasonable jury could not infer an improper motive from these alleged changes alone. See Robertson v. Fiore, 62 F.3d 596, 601 (3d Cir. 1995) (finding that record did not support conclusion that politics, rather than poor performance, caused plaintiff's discharge).

Plaintiff's reliance on purported threats from City Council and ACHA board members is based solely on inadmissible hearsay or double hearsay statements by individuals with no connection to the decision to include Plaintiff in the 2011 layoffs.[11] See Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 223 at n.2 (3d Cir. 2000) ("In this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial."). Even if the Court accepted these statements as true, they would not establish a causal connection between his political affiliation and his layoff. Plaintiff has presented no evidence showing that members of the City Council or the ACHA board were involved in the decision to

---

[11] Plaintiff provides no argument to support the admissibility of these alleged statements.

15

terminate his position. Nor does the fact that the individuals, who may have made derogatory comments or sought to have him fired, were friends or supporters of Mayor Langford necessarily suggest that their conduct was motivated by Plaintiff's political affiliation. Plaintiff must present some evidence permitting the inference that his political affiliation caused his layoff. Plaintiff's self-serving testimony regarding hearsay statements by supporters of Mayor Langford, without any reference to Plaintiff's political affiliation and without any apparent connection to the decision to terminate his position, is not enough for a reasonable factfinder to conclude that Plaintiff's failure to support Mayor Langford was a substantial or motivating factor in his layoff.

Moreover, Defendants have offered ample evidence that he would have been laid off regardless of his political affiliation. In April, 2010, facing financial restraints, HUD required the ACHA to operate on a breakeven basis. The ACHA concluded that it was necessary to reduce its workforce and identified positions to be eliminated. The ACHA's actions are well-documented. By letter dated April 1, 2011, James notified the CSC of the planned layoff and provided an explanation for the layoff consistent with their position in this litigation (i.e., "economy, efficiency and continuing decreased operating subsidies from HUD, as well as, the new HUD rules governing the

16

organization and operation of Public Housing programs"). Plaintiff's position was identified for elimination in the letter. The ACHA considered alternatives, but determined that they would not be feasible or result in the necessary savings. Plaintiff was subsequently laid off in accordance with the ACHA's practice of retaining more senior employees. Consistent with their budget problems and the concomitant HUD directive, the ACHA terminated more employees in December, 2011 and in June, 2013.

Plaintiff does not dispute that the ACHA eliminated a number of positions in response to financial pressures and has presented no evidence to create a genuine dispute of material fact as to the reasons for Plaintiff's layoff.[12] As discussed above, the evidence in the record is insufficient to support Plaintiff's contention that he was included in the layoff due to his political affiliation, and thus insufficient to withstand summary judgment.

Galli is readily distinguishable from the instant action. In Galli, plaintiff and ten other employees appointed or hired

---

[12] The fact that ACHA continued to receive the HUD grant that was used in part to fund Plaintiff's position does not show that his layoff was avoidable in light of the overall fiscal climate at the ACHA surrounding Plaintiff's layoff. Defendants explain that Grate assumed most of Plaintiff's duties and she was then compensated through the grant. Moreover, little can be inferred from the ACHA's decision not to interview Plaintiff for the "service coordinator" position without additional information about the other candidates for the position.

during Republican administrations were replaced by 18 employees affiliated with the Democratic Party. Galli, 490 F.3d at 275. Here, Plaintiff has provided no evidence of other politically motivated terminations during the same period, nor any evidence that the employee(s) who assumed his duties were unqualified. Id. Moreover, unlike the plaintiff in Galli who was allegedly fired for poor work performance, yet received an award for excellence soon after her termination, Plaintiff has identified nothing in the record that would cast doubt on Defendants' explanation for his layoff.

Therefore, the Court will grant Defendants' motion for summary judgment as to Plaintiff's political affiliation discrimination claim under 42 U.S.C. § 1983.[13]

**B. Petition Clause**

Defendants argue that Plaintiff's claims under the U.S. and New Jersey Constitutions must fail because they are unsupported by any evidence in the record. The parties agree that the analysis under both constitutions is identical.

Plaintiff maintains that his rights under the Petition Clause of the First Amendment were violated after filing

---

[13] The parties agree that the analysis under the NJCRA as to Plaintiff's claim for political affiliation discrimination is the same as that under 42 U.S.C. § 1983. Accordingly, the Court will also grant Defendants' motion to summary judgment as to Plaintiff's claim for political affiliation discrimination under the NJCRA.

grievances, internal complaints, and a NJTCA notice complaining of his treatment by Defendants. Thereafter, he experienced adverse changes in his employment and was ultimately terminated. Plaintiff relies on Borough of Duryea, Pa. v. Guarnieri, 131 S. Ct. 2488, 2501 (2011), in which the Supreme Court held that courts assessing claims under the Petition Clause should consider whether a public employee's petition relates to a matter of public concern. Id. at 2500. "As under the Speech Clause, whether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the petition], as revealed by the whole record.'" Id. at 2501 (quoting Connick v. Myers, 461 U.S. 138, 147–148 (1983)).

The Supreme Court observed in Guarnieri that "[a] petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." Id. However, Plaintiff properly notes that discrimination is "a matter inherently of public concern." Connick, 461 U.S. at 148 n.8.

"[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation and

citation omitted). "The effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than *de minimis*." Id.

Here, Plaintiff's claim under the Petition Clause is based solely on conclusory allegations and vague assertions. Plaintiff's opposition papers refer to grievances, internal complaints, and a notice under the NJTCA without any citation to the record. Plaintiff's statement of facts includes only a citation to his testimony to support the existence of these filings. Plaintiff testified that he made complaints, filed grievances with the union, as well as a torts claims notice, but he could not recall when. Nor could he provide any additional detail regarding these alleged filings.

The Court's review of the record reveals only two "memos" in which Plaintiff complains of his experience at the ACHA, both from 2007. In the first, dated March 30, 2007, Plaintiff expresses concern that James will use her position as his supervisor for retaliatory purposes after a newspaper article reported claims by James' sister of "political payback." (Pl. Ex. C.) In the second, dated April 25, 2007, Plaintiff complains of James' request for a list of FSS clients which he interpreted as an attempt to "discredit" him and his work. (Pl. Ex. B.) Plaintiff has identified no other evidence of complaints or grievances elsewhere in the record.

The Court need not decide whether the sparse record evidence is sufficient to show he engaged in protected activity under the First Amendment because Plaintiff has provided no evidence connecting his grievances or complaints to his alleged mistreatment and ultimate layoff. Like his claim for political affiliation discrimination, Plaintiff has identified nothing in the record supporting an inference of causation beyond the blanket allegations in the complaint and his vague and conclusory testimony. Plaintiff cannot maintain a First Amendment claim without establishing some connection between the complaints and the alleged change in the terms or conditions of his employment. See Reilly v. City of Atl. City, 532 F.3d 216, 224 (3d Cir. 2008) ("[T]he employee must prove that his/her speech was "a substantial or motivating factor" in the retaliatory action against him/her."). Therefore, the Court will grant Defendants' motion for summary judgment as to Plaintiff's Petition Clause claims under the U.S. and New Jersey Constitutions.

### C. Family and Medical Leave Act

Plaintiff's claims for interference and retaliation under FMLA are similarly infirm. Plaintiff has not shown that he was denied benefits to which he was entitled to assert a claim for interference with his rights under FMLA. Moreover, Plaintiff has

failed to make a prima facie showing of retaliation under FMLA because he has proffered insufficient evidence of causation.

It is unlawful under FMLA "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To assert a claim for interference, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them." Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a), 2614(a)). "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." Id. at 120. Accordingly, the employee need not show that they were treated differently than others. Id. at 119. To establish a claim for retaliation under FMLA, a plaintiff must show (1) plaintiff took FMLA leave, (2) plaintiff suffered an adverse employment action, and (3) the adverse action was causally related to plaintiff's FMLA leave. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).

Plaintiff contends that Defendants interfered with his rights under FMLA in two ways: (1) he was initially granted FMLA leave and then told he would have to take disability leave because he had exhausted his FMLA leave; and (2) he was instructed to call Grate's business cell phone prior to taking

22

intermittent leave. As for his first contention, Plaintiff has not shown that he was entitled to benefits under FMLA, and there is thus no basis to conclude that he was improperly denied those benefits. Notably, Plaintiff concedes that he was never denied leave to which he was entitled. Next, Plaintiff fails to explain how the requirement that he notify Grate prior to taking intermittent leave "diminish[ed] the rights created by the FMLA." Callison, 430 F.3d 117 at 121. Certainly, in light of his admission that he was never denied leave, Plaintiff has not shown how calling his supervisor on her business cell phone prior to taking intermittent leave impaired his rights under FMLA in any way. Nor does Plaintiff contend that Grate's preference for notification was a pre-requisite for taking FMLA leave. Therefore, Plaintiff's claim of interference under FMLA must fail.

Plaintiff's retaliation claim under the FMLA is so devoid of factual support it hardly warrants discussion. Plaintiff dedicates one conclusory sentence, without any citation to the record, to his assertion that the ACHA's decision to include him in the 2011 layoff was retaliation for his exercise of rights under FMLA. Like Plaintiff's constitutional claims, his FMLA retaliation claim also fails for lack of causation. Plaintiff presents no evidence connecting his two periods of FMLA leave to his layoff in 2011, and his argument is merely *post hoc ergo*

*propter hoc*. Plaintiff cannot maintain a retaliation claim simply because he took FMLA leave prior to his termination. Absent additional facts, chronological coincidence is insufficient to maintain a claim for retaliation under FMLA, and the Court will grant Defendants' motion for summary judgment on these grounds.[14]

**V.     CONCLUSION**

In light of the foregoing, the Court will grant Defendants' motion for summary judgment and dismiss Plaintiff's action in its entirety. Plaintiff has failed to support his allegations that his termination was discriminatory based on his political affiliation or retaliatory based on the exercise of his rights under the U.S. and New Jersey Constitutions or under FMLA. There is no genuine dispute of material fact that Plaintiff was terminated as part of reduction of the ACHA workforce in 2011. An accompanying Order will be entered.

| | |
|---|---|
| **November 18, 2014** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |

---

[14] Because the Court will grant Defendants' motion for summary judgment on all of Plaintiff's claims, there is no need to discuss Defendants' argument that Plaintiff has not shown sufficient personal involvement by Defendants Grate and James to establish individual liability.